UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GLORIA JEAN LYLE,
A/K/A, ANITA FAYE FORD,

                    Petitioner,

v.
                                        Case No. 3:04-cv-1285-J-12TEM
JAMES R. MCDONOUGH,[1]
et al.,

                    Respondents.

_____

**ORDER**

**I. Status**

Petitioner Lyle, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on December 13, 2004.  She filed an Amended Petition (Doc. #6) on January 5, 2005, and a Second Amended Petition (Doc. #8) on February 10, 2005.  Petitioner challenges a 1999 state court (Duval County, Florida) judgment of conviction for sale or delivery of cocaine on the following grounds:  (1) ineffective assistance of

_____

[1] James R. McDonough, the Interim Secretary of the Florida Department of Corrections, is substituted as a proper party Respondent having custody of the Petitioner.

trial counsel for failure to move for a mistrial or request a curative instruction in response to the prosecutor's statement in closing argument, which attacked the defense's trial tactics; (2) the trial court denied her a fair and impartial trial by failing to grant her a new trial due to the prosecutorial misconduct alleged in ground one; (3) ineffective assistance of trial counsel for failure to object to Officer Robert John's answer (on cross-examination) that violated the motion in limine; (4) ineffective assistance of trial counsel for failure to investigate and impeach witness Velma Edwards; (5) ineffective assistance of trial counsel for failure to object and preserve for appellate review the issue of the legality of the introduction at trial of a scarf Petitioner was wearing at the time of her arrest; (6) ineffective assistance of trial counsel for failure to object to habitualization; and, (7) ineffective assistance of trial counsel for misadvising Petitioner not to testify.

Respondents filed an Answer to Second Amended Petition for Writ of Habeas Corpus (Doc. #15) (hereinafter Response).   In support of their Response, they submitted exhibits.[2]   Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment.   See Court's Order to Show Cause and Notice to Petitioner (Doc. #10); Court's Order (Doc. #18).

---

[2] Respondents' exhibits will be hereinafter referred to as "Ex."

Petitioner has notified the Court that she does not intend to file a Reply, but will rely upon the claims as stated in the Second Amended Petition.  <u>See</u> Petitioner's Response to Order to Show Cause (Doc. #21).   This case is now ripe for review.

## II. Procedural History

On February 8, 1999, Petitioner was charged with sale or delivery of cocaine.  Ex. A at 8-9.  Petitioner was tried by a jury, but the result was a hung jury on May 27, 1999.  <u>Id</u>. at 34. On July 29, 1999, Petitioner was tried again, and a jury found Petitioner guilty of sale or delivery of cocaine, as charged in the Information.  <u>Id</u>. at 96; Ex. C and Ex. D, Transcripts of the Jury Trial Proceedings (hereinafter Tr.).  On August 30, 1999, the trial court adjudicated Petitioner Lyle guilty and sentenced her to a fifteen-year term of incarceration as a habitual felony offender. Ex. A at 119-24; Ex. B, Transcript of the Sentencing Proceedings, at 203-22; <u>see</u> http://www.dc.state.fl.us/ActiveInmates (Florida Department of Corrections website).[3]

On August 9, 2000, the appellate court granted her petition for a belated appeal.  <u>Lyle v. State</u>, 766 So.2d 391 (Fla. 1st DCA 2000); Ex. A at 182B.  On appeal, Petitioner raised the following claim:  the trial court erred in excluding Armetrice Jernigan as a witness.  Ex. E.  The State filed an Answer Brief.  Ex. F.  On July

---

[3] Petitioner's current estimated release date is March 19, 2012.  <u>See</u> http://www.dc.state.fl.us/ActiveInmates.

12, 2001, the appellate court per curiam affirmed without a written opinion. Lyle v. State, 792 So.2d 453 (Fla. 1st DCA 2001) (table decision); Ex. G. The mandate was issued on July 30, 2001. Ex. H.

On or about March 27, 2002, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising the following claims: (1) ineffective assistance of trial counsel for failure to request a mistrial when the prosecutor personally attacked the defense's tactics; (2) ineffectiveness for failure to cure a prejudicial comment that violated the court's motion in limine; (3) ineffectiveness for failure to object to Petitioner's scarf being entered into evidence; (4) ineffectiveness for failure to impeach and investigate Velma Edwards; (5) ineffectiveness for failing to properly advise her on her right to testify on her own behalf; and, (6) ineffectiveness for failure to object to the imposition of an illegal sentence. Ex. I. On December 29, 2003, and January 21, 2004, the court held hearings on ground six of Petitioner's Rule 3.850 motion, in which Petitioner argued that her trial counsel was ineffective for failing to object to her receiving an illegal habitual felony offender sentence. Id. at 13-17; Ex. K at 491-505.

On or about February 5, 2004, Petitioner filed a motion for correction of illegal sentence pursuant to Fla. R. Crim. P. 3.800(a), in which she states that her habitual felony offender sentence is illegal. Ex. I at 64-66. On March 29, 2004, the trial

court issued an order denying the Rule 3.850 and Rule 3.800(a) motions. Id. at 67-75. On October 22, 2004, the appellate court per curiam affirmed without a written opinion. Lyle v. State, 886 So.2d 231 (Fla. 1st DCA 2004) (table decision); Ex. L. The mandate was issued on November 17, 2004. Ex. M.

Petitioner's Petition (signed and dated on December 7, 2004, and filed in this Court on December 13, 2004) is timely filed within the one-year period of limitations. See 28 U.S.C. § 2244(d); Response at 5-6.

### III. EVIDENTIARY HEARING

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing. A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here, the pertinent facts of the case are fully developed in the record before the Court. Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). No evidentiary proceedings are required in this Court. High v. Head, 209 F.3d

5

1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S.
467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).  The Court can
"adequately assess [Petitioner's] claim[s] without further factual
development."  Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir.
2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, for the
reasons set forth above, an evidentiary hearing will not be
conducted by this Court.

### IV.   STANDARD OF REVIEW

On April 24, 1996, the President signed into law the
Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-
132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was
filed after the effective date of AEDPA, the Court will analyze
Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.
Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert.
denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215
n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox
v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998),
cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review
under AEDPA:

> Title 28 U.S.C. § 2254 governs the
> authority of the federal courts to consider
> applications for writs of habeas corpus
> submitted by state prisoners.  Section 2254
> was amended by the Antiterrorism and Effective
> Death Penalty Act of 1996 ("AEDPA"), Pub.L.
> No. 104-132, 110 Stat. 1214 (1996), which was
> effective as of April 24, 1996.  AEDPA applies

to all petitions filed after its effective
date. . . .

AEPDA "places a new constraint on a
federal habeas court's power to grant a state
prisoner's application for a writ of habeas
corpus with respect to claims adjudicated on
the merits in state court" by establishing a
deferential standard for reviewing state court
judgments in these cases. <u>Williams v. Taylor</u>,
529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
L.Ed.2d 389 (2000).  Subsection (d) of § 2254
provides:

> (d) An application for a writ of
> habeas corpus on behalf of a person
> in custody pursuant to the judgment
> of a State court shall not be
> granted with respect to any claim
> that was adjudicated on the merits
> in State court proceedings unless
> the adjudication of the claim--
>
> (1) resulted in a decision that was
> contrary to, or involved an
> unreasonable application of, clearly
> established Federal law, as
> determined by the Supreme Court of
> the United States; or
>
> (2) resulted in a decision that was
> based on an unreasonable
> determination of the facts in light
> of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

AEDPA also makes clear that substantial
deference is to be accorded a state court's
findings of fact.  Section 2254(e)(1) provides
that "a determination of a factual issue made
by a State court shall be presumed to be
correct.  The applicant shall have the burden
of rebutting the presumption of correctness by
clear and convincing evidence."  28 U.S.C. §
2254(e)(1).

Henderson v. Campbell, 353 F.3d 880, 889-891 (11th Cir. 2003) (footnote omitted), cert. denied, 543 U.S. 811 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court adjudications: "[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness." Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003); Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that the Ohio Court of Appeals' decision was not "contrary to" or an "unreasonable application" of clearly established federal law and stressing "the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)").

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, --- U.S.

---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405, 120 S.Ct. at 1519).   A state court's decision that applies the correct legal rule would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law.  See Williams, 529 U.S. at 404-06, 120 S.Ct. at 1519-20 (O'Connor, J., concurring).

. . . .

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 414, 120 S.Ct. at 1523 (O'Connor, J., concurring).   In deciding this issue, the federal court should consider whether the state court's application of the law was objectively unreasonable and should not apply the subjective "all reasonable jurists" standard.  Id. at 409-10, 120 S.Ct. at 1521-22.   The Supreme Court recently adhered to its pronouncements in Williams, stating that "we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).  The Court further noted that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Id. (quoting Williams, 529 U.S. at 411, 120 S.Ct. at 1522 (O'Connor, J., concurring)).

Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of
> AEDPA, we have recognized that where no
> Supreme Court precedent is on point, "we
> cannot say that the state court's conclusion
> . . . is contrary to clearly established
> Federal law as determined by the U.S. Supreme
> Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254,
> 1258 (11th Cir. 2000).

<u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir.), <u>cert</u>.

<u>denied</u>, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine

whether the state court's adjudication resulted in a decision that

was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.  Furthermore,

AEDPA "also directs that a presumption of correctness be afforded

factual findings of state courts, which may be rebutted only by

clear and convincing evidence.  <u>See id</u>. at § 2254(e)(1).  This

presumption of correctness applies equally to factual

determinations made by state trial and appellate courts."  <u>Bui v.</u>

<u>Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)

(citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling.  <u>Wright v. Sec'y for the Dep't of</u>

<u>Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S.

906 (2003).   Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.   That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 125 S.Ct. 2456, 2462 (2005) (citations omitted).   If counsel's performance falls "below the line of reasonable practice, there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Id</u>. at 2467 (citation omitted).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. <u>See Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).   Establishing these two elements is not easy:   "the cases in which habeas

petitioners can properly prevail on the ground
of ineffective assistance of counsel are few
and far between." Waters v. Thomas, 46 F.3d
1506, 1511 (11th Cir. 1995) (en banc) (quoting
Rogers v. Zant, 13 F.3d 384, 386 (11th Cir.
1994)).

For assessing a lawyer's performance,
Chandler v. United States, 218 F.3d 1305 (11th
Cir. 2000) (en banc) cert. denied, 531 U.S.
1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001),
sets out the basic law: "Courts must indulge
the strong presumption that counsel's
performance was reasonable and that counsel
made all significant decisions in the exercise
of reasonable professional judgment." Id. at
1314 (internal marks omitted). . . . Our role
in reviewing an ineffective assistance claim
is not to "grade" a lawyer's performance;
instead, we determine only whether a lawyer's
performance was within "the wide range of
professionally competent assistance." See
Strickland, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has
provided effective assistance is an objective
one:  a petitioner must establish that no
objectively competent lawyer would have taken
the action that his lawyer did take." See
Chandler, 218 F.3d at 1315. . . .

A petitioner's burden of establishing
that his lawyer's deficient performance
prejudiced his case is also high. "It is not
enough for the [petitioner] to show that the
errors had some conceivable effect on the
outcome of the proceeding. Virtually every
act or omission of counsel would meet that
test." Strickland, 104 S.Ct. at 2067.
Instead, a petitioner must establish that a
reasonable probability exists that the outcome
of the case would have been different if his
lawyer had given adequate assistance. See id.
at 2068.[4]

---

[4] However, "when a defendant raises the unusual claim that
trial counsel, while efficacious in raising an issue, nonetheless

Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1322-23 (11th Cir. 2002) (per curiam) (footnotes omitted), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting Strickland, 466 U.S. 668, 687 (1984)). In reviewing an ineffectiveness claim, this Court does not need to "approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Saldo v. Crosby, 162 Fed. Appx. 915, 916 (11th Cir. 2006) (citation omitted) (not selected for publication).

### VI. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner claims that counsel was ineffective for failure to move for a mistrial or request a curative instruction in response to the prosecutor's statement, which attacked the defense's trial tactics. Specifically, Petitioner contends that the prosecutor's

---

failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted).

statement, in closing argument, implied to the jury that Petitioner had plotted with another jail inmate to deceive the jury so that Petitioner would be found not guilty of the charged offense of sale or delivery of cocaine.

Petitioner raised this ground in her Rule 3.850 motion.  The trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and adjudicated the claim on the merits.  In denying the claim, the trial court stated, in pertinent part:

> In ground one, Defendant asserts that counsel rendered ineffective assistance by failing to request a mistrial after the State's [sic] attacked defense tactics during closing arguments.  In <u>Thomas v. State</u>, 748 So.2d 970, 980 (Fla. 1999), the Florida Supreme Court held that "it has been long established and continuously adhered to that the power to declare a mistrial and discharge the jury should be exercised with great care and caution and should be done only in cases of absolute necessity."  *See also* <u>Pagan v. State</u>, 830 So.2d 792 (Fla. 2002); <u>Snipes v. State</u>, 733 So.2d 1000 (Fla. 1999); <u>Buenoano v. State</u>, 527 So.2d 194 (Fla. 1988).  Additionally, in <u>Cumbie v. State</u>, 380 So.2d 1031[,] 1034 (Fla. 1980), the Florida Supreme Court held "to avoid interruption in the continuity of the closing argument and more particularly to afford defendant an opportunity to evaluate the prejudicial nature of the objectionable comments in the context of the total closing argument, we do not impose a strict rule requiring that a motion for mistrial be made in the next breath following the objection to the remark."  Upon review of the trial transcripts, this Court notes that counsel objected to the remarks made by the State at the time the remarks were made and the Court sustained the objection.

> (Exhibit "C," page 285.)  Counsel later moved
> for a mistrial based upon the State's improper
> comments and the Court overruled the request.
> (Exhibit "C," page 290.)   Based upon this,
> this Court finds that counsel's request for a
> mistrial was not made in an untimely fashion.
> <u>Cumbie</u>.   Accordingly, this Court finds that
> Defendant has failed to establish error by
> counsel or prejudice to her case.

Ex. I at 68-69.

As noted previously, Petitioner appealed, and the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.   Thus,   there   are   qualifying   state   court decisions.    This   ground   should   be   addressed   applying   the deferential   standard   for   federal   court   review   of   state   court adjudications, as required by AEDPA.  The Court must next consider the "contrary to" and "unreasonable application" components of the statute.   "It is the objective reasonableness, not the correctness <u>per</u> <u>se</u>, of the state court decision that we are to decide."  <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the

15

facts in light of the evidence presented in the state court proceedings.

Petitioner's defense theory was that Velma Edwards, not Petitioner, committed the offense of sale or delivery of cocaine on January 5, 1999. Tr. at 93-97, 261-76. Petitioner called a jail inmate, Amy West, to testify that in June of 1999, Velma Edwards, a fellow inmate, confessed to West that she had committed the January 5, 1999, sale of cocaine offense that Petitioner had been charged with committing. Id. at 198-200, 206-17. West testified that she told Petitioner about Edwards' confession in July of 1999. Id. at 216-17. However, Edwards testified that she was not the person who sold cocaine on January 5, 1999, and that she never told West or anyone else that she was the person. Id. at 237-41.

West acknowledged that she had spoken three times to Petitioner's trial counsel about the testimony that she would give at trial. Id. at 224. West had three prior felony convictions and three convictions for crimes of dishonesty. Id. at 198, 220.

During the defense's closing argument, defense counsel reminded the jury that the person who sold the cocaine to Detective Simpson on January 5, 1999, was not Petitioner, but rather "[t]hat person was Velma Edwards." Id. at 262. Petitioner's counsel described the reasonable doubt that existed in the case.

> You have so much reasonable doubt, I
> can't remember it all, so much came out. The
> strongest reasonable doubt is Amy West
> testifying that Velma Edwards has admitted to

being guilty of this charge since she had been
incarcerated on her new sale charge that she
got on June 3rd.  That is the strongest doubt.
And really that's all the doubt you need,
that's enough.    That's reasonable doubt,
that's enough to find this lady not guilty of
sell [sic] of cocaine.

          .  .  .  .

[Velma Edwards] is the one that should be on
trial here today for this sell [sic] of
[cocaine] that occurred January 5th of 1999
and not this lady, Anita Fay Ford.

     She is the one that is guilty of sell
[sic] of cocaine, Velma Edwards, not Anita Fay
Ford.

     The only thing Anita Fay Ford is guilty
of is asking for some cocaine but that's not
what she's charged with.  She's charged with
sell [sic] of cocaine.  The only thing she is
guilty of is being in the wrong place at the
wrong time[,] of having the worse [sic] of
luck.

Id. at 270, 271-72.

     Thereafter, during the State's closing argument, the

prosecutor made the following comment:

          Now let's talk about the possible
     incompetence of the detectives because if we
     are to believe what the defense has put on
     here we must also believe that all the
     officers I put on were completely incompetent.
     That they weren't able to do what I've just
     spent several minutes explaining to you, they
     weren't able to focus on this face, and they
     weren't able to get a distinct picture in
     their mind.

          For us to believe what the defense put on
     we must believe that they cannot do that.  And
     they mistook that woman that got on the stand
     for the person that sold them cocaine on

17

January 5th.  And ladies and gentlemen, I urge
you as I urged you on Monday to use your
common sense.

I watched all of you and you all were
wonderful how you would look at her and look
at the defendant and you would look at her and
look at the defendant and there are marked
differences, marked differences.  And it
doesn't come down to facial features, it comes
down to the entire composite.

And again I'd ask you to look at the
defendant because she has a very distinctive
look about her, much more distinctive, I
submit to you, than Velma Edwards.

But now let's talk about the forced doubt
the defense wants you to accept.  And I say
the forced doubt because they really put it
over on you.

**And ladies and gentlemen, I submit to you
there is going to be a new defense in
Jacksonville, Florida, it's going to be very
difficult to convict folks in Florida.  You
want to know why?  Because they're going to
get somebody in the jail to come over --**

Id. at 285 (emphasis added).  Defense counsel objected before the

prosecutor could finish her statement; the trial judge sustained

the objection; and, the prosecutor continued with her closing

argument.  Id.

Later, during the State's closing argument, defense counsel

moved for a mistrial based on the prosecutor's previous statement.

Id. at 290.  The trial judge responded:

Well, the first objection that you
referred to I obviously sustained the
objection, advised the jurors they should
disregard it.  Apparently Miss Agent [the
prosecutor] not real versed in the prohibition

18

> in closing arguments to make personal attacks
> on the defense attorney as to their tactics
> but there wasn't a request for mistrial at
> that time.

<u>Id</u>. at 290-91.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence.  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citations omitted).  Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.  <u>See</u> Response at 11-12.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice in light of the isolated and partial nature of the prosecutor's statement (since defense counsel objected before the prosecutor was able to complete the statement) and the evidence of Petitioner's guilt (including the identification testimony of undercover Detective Eileen Simpson, undercover Detective Elliott Van Dyke and Officer Robert Allen John).  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if Petitioner's lawyer had given the assistance that Petitioner has alleged she should have provided.  Further, it is noteworthy that the trial judge instructed the jury that the attorneys were not witnesses in the case and therefore their

19

statements and arguments were not evidence.  Tr. at 84, 255; <u>see</u> <u>Brown v. Jones</u>, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) (stating that "jurors are presumed to follow the court's instructions."), <u>cert</u>. <u>denied</u>, 534 U.S. 1085 (2002).  Thus, the ineffectiveness claim is without merit.  <u>See</u> Response at 9-12.

**B. Ground Two**

Petitioner claims that the trial court denied her a fair and impartial trial by failing to grant her a new trial due to the prosecutorial misconduct alleged in ground one.  Respondents contend, and this Court agrees, that Petitioner's claim, here, is procedurally barred from federal habeas corpus review.  <u>See</u> Response at 12-13.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. <u>Castille v. Peoples</u>, 489 U.S. 346, 349, <u>reh'g</u> <u>denied</u>, 490 U.S. 1076 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).  The courts of Florida must be given an opportunity to consider Petitioner's legal theory of a federal constitutional deficiency and the factual basis for that theory.  <u>Picard v. Connor</u>, 404 U.S. 270, 277 (1971).

> Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 [1971] ) (internal quotation marks

omitted).  The Supreme Court has written these words:

> [T]hat the federal claim must be fairly presented to the state courts . . . . it is not sufficient merely that the federal habeas applicant has been through the state courts . . . . Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.

> Picard, 404 U.S. at 275, 92 S.Ct. at 512.  See also Duncan, 513 U.S. at 365, 115 S.Ct. at 888 ("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.").

> Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.  "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made."  Anderson v. Harless, 459 U.S. 4, 5-6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted).

Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir.), cert. denied, 525 U.S. 963 (1998).

Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies.  Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992).  A federal court need not

dismiss to allow for exhaustion of state remedies, however, if such a dismissal would be futile.

> [I]f the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam) (citing Snowden, 135 F.3d at 737).

It would be futile for this Court to dismiss this unexhausted federal claim because it could have and should have been raised on direct appeal and motions for post-conviction relief are "neither a second appeal nor a substitute for appeal." McCrae v. State, 437 So.2d 1388, 1390 (Fla. 1983). Clearly, "[a] petitioner in Florida is not entitled to collateral relief 'based upon grounds which could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.'" Tejada v. Dugger, 941 F.2d 1551, 1556 (11th Cir. 1991) (quoting Fla. R. Crim. P. 3.850(c)), cert. denied, 502 U.S. 1105 (1992).

Accordingly, Petitioner's claim under ground two has been procedurally defaulted. As outlined by the Eleventh Circuit, "[t]here are only two exceptions to the procedural default rule. First, a petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause

excusing the default and actual prejudice resulting from the bar." <u>Hill v. Jones</u>, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), <u>cert</u>. <u>denied</u>, 519 U.S. 1119 (1997).  The Court continued: "[s]econd, in extraordinary cases, a federal habeas court may grant the writ without a showing of cause and prejudice to correct a fundamental miscarriage of justice."  <u>Id</u>. at 1023 (citation omitted).

> For [a petitioner] to show cause, the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S.Ct. 2639).  Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness."  <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir.), <u>cert</u>. <u>denied</u>, 528 U.S. 934 (1999).

Petitioner has not shown cause and prejudice or that a fundamental miscarriage of justice will result if her claim under ground two is not addressed on the merits.  The fundamental miscarriage of justice exception "requires a colorable showing of actual innocence, which [Petitioner] has not made." <u>Bailey</u>, 172 F.3d at 1306 (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 324-27 (1995)). Thus, the Court need not review the merits of Petitioner's unfair trial claim under ground two.  Even assuming *arguendo* that this

claim is not procedurally barred, the claim is without merit.  See
Section VI.A., Ground One; Response at 13-14.

## C. Ground Three

Petitioner claims that defense counsel was ineffective for
failure to object to Officer Robert John's answer (on cross-
examination) that violated the motion in limine.  Petitioner raised
this ground in her Rule 3.850 motion.  The trial court identified
the two-prong Strickland ineffectiveness test as the controlling
law and adjudicated the claim on the merits.  In denying the claim,
the trial court stated, in pertinent part:

> In ground two, Defendant asserts that
> counsel rendered ineffective assistance by
> failing to cure the prejudicial statement made
> by Officer John during cross-examination.
> Defendant contends that during cross
> examination, Officer John referred to an area
> as a "narcotics area" in violation of Motion
> In Limine #1 and counsel failed to cure[,]
> leaving the impression that Defendant was in
> [that] area for that purpose.  Courts have
> held that reversible error occurred when the
> State highlighted the reputation of an area as
> being a high crime area in opening and closing
> statements and officers also testified to this
> reputation.  Dorsey v. State, 639 So.2d 158
> (Fla. 1st DCA 1994); Hutchinson v. State, 580
> So.2d 257 (Fla. 1st DCA 1991); Latimore v.
> State, 819 So.2d 956 (Fla. 4th DCA 2002);
> Johnson v. State, 559 So.2d 729 (Fla. 4th DCA
> 1990).  However, upon review of the trial
> transcripts in the instant case, this Court
> notes that the State did not reference the
> reputation of the area of the charged offense
> as a high crime area and Officer John's
> reference to a narcotics area was a general
> reference to his procedure in the field and he
> did not specifically refer to the [sic] where
> the charged offense occurred. (Exhibit "C,"

> page 176.) <u>Conner v. State</u>, 582 So.2d 750
> (Fla. 1st DCA 1991).  Accordingly, this Court
> finds that Defendant failed to establish error
> by counsel or prejudice to her case.

Ex. I at 69.

As noted previously, Petitioner appealed, and the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.  Thus, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Prior to her trial, Petitioner filed a motion in limine to prohibit the State from introducing any testimony from any State witness that the area where Petitioner allegedly sold or delivered cocaine is known for drug sales, drug use, or is a high crime area.  Ex. A at 57-58.  The trial court granted the motion in limine.  <u>Id</u>. at 59.

During the cross-examination of Officer Robert John (a State witness), defense counsel questioned him about his previous

description that he had noticed that Petitioner had large, rough hands when he questioned Petitioner at the site of the alleged sale of cocaine.  Tr. at 175-76.  Officer John responded:

> Well, whenever I contact someone in the
> field especially in a narcotics area the first
> thing I look at is their hands because if they
> have something like a razor blade that would
> be used that's in [sic] my benefit.  So yes,
> ma'am, that would be the first thing I would
> notice would be the hands.

Id. at 176.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d at 1319-20.  Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.  Officer John's statement was not objectionable since it was a general reference to his procedure in the field.  Further, even if it was objectionable, defense counsel would have drawn attention to it if she had objected.  See Response at 14-16.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice in light of the nature of Officer John's isolated response and the evidence of Petitioner's guilt.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been

26

different if Petitioner's lawyer had given the assistance that Petitioner has alleged she should have provided.   Thus, the ineffectiveness claim is without merit.   <u>See</u> Response at 14-16.

### D. Ground Four

Petitioner claims defense counsel was ineffective for failure to investigate and impeach the State's rebuttal witness, Velma Edwards.   Petitioner raised this ground in her Rule 3.850 motion. The trial court, after identifying the two-prong <u>Strickland</u> ineffectiveness test as the controlling law, adjudicated the claim on the merits.   In denying the claim, the trial court stated, in pertinent part:

> In ground four, Defendant rendered ineffective assistance by failing to investigate State witness, Velma Edwards, and properly impeach her with the use of a police report to establish her weight and height and records from Hubbard House to establish when she was there.   This Court notes that a police report is considered hearsay and not admissible in court.   <u>Burgess v. State</u>, 831 So.2d 137 (Fla. 2002).   Additionally, this Court notes that any police report involving Ms. Edwards would have been inadmissible as improper impeachment since only convictions and not arrests are admissible as impeachment. § 90.610, Fla. Stat. (1999); <u>Torres-Arboledo v. State</u>, 524 So.2d 403 (Fla. 1988).   Further, assuming arguendo that counsel had obtained the records for Hubbard House to establish when Ms. Edwards was present, these records would not have established that Ms. Edwards was at the location of the charged offense and selling cocaine to the officer.   Moreover, this Court notes that Ms. Edwards testified in court so the jury could see her height in relation to Defendant and Ms. Amy West testified that she had seen Ms. Edwards around

the time of the charged offense and provided an estimated weight for Ms. Edwards. (Exhibit "C," pages 218-219, 233-246.) Therefore, this Court finds that any further cross-examination of the State's key witness would have been cumulative in light of the other testimony presented at trial on cross-examination. State v. Riechmann, 777 So.2d 342 (Fla. 2000); Valle v. State, 705 So.2d 1331, 1334-35 (Fla. 1997); Provenzano v. Dugger, 561 So.2d 541, 545-46 (Fla. 1990). Accordingly, this Court finds that Defendant has failed to establish error by counsel or prejudice to her case.

Ex. I at 70-71.

As noted previously, Petitioner appealed, and the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. Thus, Petitioner must establish that no competent

attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d at 1319-20.  Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.  See Response at 16-18.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if Petitioner's lawyer had given the assistance that Petitioner has alleged she should have provided. Further, it is noteworthy that defense counsel, in closing argument, contended that Velma Edwards was not a credible witness.

> Velma Edwards is so not reliable here today, she even lied about her height, she said she was five four.  Detective Simpson took the stand and said she's five six.[5]  So Velma is at least five seven because she's taller than her.  Why lie about her height? Because she knows how tall Anita Fay Ford is, so she can't be anywhere near her height, helps to confuse you, why lie about your height?  Because she's a liar and she's a drug dealer.  And she is the one that should be on trial here today for this sell [sic] of cocaine that occurred January 5th of 1999 and not this lady, Anita Fay Ford.

Tr. at 271.  Thus, the ineffectiveness claim is without merit.  See Response at 16-18.

---

[5] Detective Simpson testified, on cross-examination, that Velma Edwards is "[a] little taller than I am.  I'm five six maybe five seven maybe a little taller than me."  Tr. at 250.  Detective Simpson further stated that Velma Edwards, in June of 1999, weighed approximately 110 or 115 pounds.  Id.

### E. Ground Five

Petitioner claims defense counsel was ineffective for failure to object and preserve for appellate review the issue of the legality of the introduction at trial of a scarf Petitioner was wearing at the time of her arrest for the charged offense of sale or delivery of cocaine.  Petitioner raised this ground in her Rule 3.850 motion.   The trial court, after identifying the two-prong Strickland ineffectiveness test as the controlling law, adjudicated the claim on the merits.   In denying the claim, the trial court stated, in pertinent part:

> In ground three, Defendant asserts that counsel rendered ineffective assistance by failing to object to the scarf being introduced into evidence.   Section 90.604, Florida Statutes (1999), provides that witnesses are permitted to testify if they have personal knowledge of the events they are testifying to.   Officer John testified that Defendant was wearing the scarf during his first encounter with her when he obtained her personal information after the charged offense.   (Exhibit "C," pages 167-168.) Officer John also testified that Defendant was wearing the exact same scarf on the day he arrested her for the charged offense. (Exhibit "C," pages 167-168.)  Since Officer John testified that he witnessed Defendant wearing the scarf and used it as an identifier for Defendant, this Court finds that the admission of the scarf was relevant to establish the identify of Defendant. Accordingly, this Court find[s] that Defendant has failed to establish error by counsel or prejudice to her case.

Ex. I at 69-70.

As noted previously, Petitioner appealed, and the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.  Thus, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.   Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Detective Simpson testified that the person she bought the cocaine from on January 5, 1999, was wearing a scarf around her head.  Tr. at 104-06.  Simpson contacted Officer John immediately after leaving the purchase site, and she observed him make contact with the person from whom she had purchased the cocaine.  Id. at 108-13.  Simpson identified Petitioner as the person from whom she had bought the cocaine.[6]  Id. at 107.

Detective Van Dyke testified that the person who made the deal with Detective Simpson on January 5, 1999, was wearing a scarf on

---

[6] Detective Simpson testified that Velma Edwards and Petitioner Lyle are "absolutely two different people." Tr. at 249.

her head.  _Id_. at 139.   Van Dyke identified Petitioner as the person who had made the deal with Detective Simpson.  _Id_. at 139-40.

Officer John testified that he made contact with Petitioner after Detective Simpson's cocaine purchase on January 5, 1999, and he arrested Petitioner on January 21, 1999.  _Id_. at 162-68. Petitioner was wearing the same scarf around her head on both days. _Id_. at 165-67.  Officer John identified State's Exhibit B as the same scarf that Petitioner had been wearing when he contacted her on January 5, 1999, and when he arrested her on January 21, 1999. _Id_. at 168.   The scarf was introduced into evidence without an objection by defense counsel.  _Id_. at 168-69.   Thus, as noted by the trial court in ruling on the merits of the claim in the Rule 3.850 motion, the scarf was relevant to establish the identity of Petitioner.

In evaluating the performance prong of the _Strickland_ ineffectiveness inquiry, there is a strong presumption in favor of competence.   Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. _United States v. Freixas_, 332 F.3d at 1319-20.   Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.   _See_ Response at 18-20.

Even assuming _arguendo_ deficient performance by defense counsel, Petitioner has not shown prejudice.   Petitioner has not

shown that a reasonable probability exists that the outcome of the case would have been different if Petitioner's lawyer had given the assistance that Petitioner has alleged she should have provided. Thus, the ineffectiveness claim is without merit. <u>See</u> Response at 18-20.

### F. Ground Six

Petitioner claims that defense counsel was ineffective for failure to object to her habitualization sentence, which was illegal because (a) the conviction she was sentenced for and the predicate offenses for habitualization were violations of Section 893.13 of the Florida Statutes, and (b) she was never given written notice about the possibility of habitualization. Petitioner raised ground 6(a) in her Rule 3.850 motion.[7]   The trial court, after identifying the two-prong <u>Strickland</u> ineffectiveness test as the controlling law, adjudicated the claim on the merits.   In denying the claim, the trial court stated, in pertinent part:

> In ground six, Defendant asserts that counsel rendered ineffective assistance by failing to object to an illegal sentence being imposed.   Specifically, Defendant contends that she did not have the requisite prior felony convictions that occurred within five

---

[7] To the extent that Petitioner failed to exhaust ground 6(b), the claim is procedurally barred. <u>See</u> Response at 6-7, 21-22; <u>see also</u> Section VI.B., Ground Two.   Even assuming *arguendo* that the ground is not procedurally barred, the claim is without merit because Petitioner was given written notice about the possibility of habitualization prior to her trial.   Ex. A at 10, Notice of Intent to Classify Defendant as a Habitual Felony Offender, filed February 17, 1999.

years of the instant offense and therefore,
she could not have been classified as an
Habitual Felony Offender. On December 29,
2003, an evidentiary hearing was conducted and
a copy of the transcripts is attached to this
Order as an Exhibit. (Exhibit "D.") During the
evidentiary hearing, the State established
that Defendant was released from the custody
of the Department of Corrections on June 16,
1995. (Exhibits "D," pages 3-4, 6, "E.") On
January 21, 2004, this Court found that, based
upon the records provided by the State,
Defendant was not improperly classified as an
Habitual Felony Offender. (Exhibit "F.")
Accordingly, this Court finds that Defendant
has failed to establish error by counsel or
prejudice to her case.

In the Motion for Correctional [sic] of
Illegal Sentence, Defendant asserts that her
Habitual Felony Offender classification was
improper since the Court relied upon a prior
conviction for Possession of Cocaine in
violation of section 775.084(1)(a)(3), Florida
Statutes (1996). A defendant may be sentenced
as an habitual felony offender provided that
"[t]he felony for which the defendant is to be
sentenced, and *one of the two prior felony
convictions,* is not a violation of Section
893.13, Florida Statutes (1996), relating to
the purchase or the possession of a controlled
substance." (emphasis added) Hayes v. State,
677 So.2d 304, 305 (Fla. 1st DCA 1996). Thus,
where a defendant is being sentenced for a
crime not relating to the possession or
purchase of a controlled substance, and one of
the two prior convictions is likewise not for
possession or purchase of a controlled
substance, habitualization is proper. Perez
v. State, 647 So.2d 1007 (Fla. 3rd DCA 1994).

In the instant case, the State used
Defendant's two prior convictions for Sale or
Delivery of Cocaine to enhance her sentence in
the instant case. (Exhibit "G.") Defendant's
instant conviction was for *Sale or Delivery* of
Cocaine, *not* for Possession of Cocaine.
(Exhibit "A.") Accordingly, Defendant's

34

                    classification as a Habitual Felony Offender
                    was not improper.

Ex. I at 72-73.

        As noted previously, Petitioner appealed, and the appellate
court per curiam affirmed the trial court's order.  Accordingly,
the claim was rejected on the merits by the state trial and
appellate courts.  Thus, this ground should be addressed applying
the deferential standard for federal court review of state court
adjudications, as required by AEDPA.   Upon a thorough review of
the record and the applicable law, it is clear that Petitioner is
not entitled to relief on the basis of this claim because the state
courts' adjudications of the claim were not contrary to clearly
established federal law, did not involve an unreasonable
application of clearly established federal law, and were not based
on an unreasonable determination of the facts in light of the
evidence presented in the state court proceedings.  See Response at
22-23.

                          **G. Ground Seven**

        Petitioner claims that defense counsel was ineffective for
misadvising her not to testify since the existence of her facial
scars had already been established.  Petitioner raised this ground
in her Rule 3.850 motion.  The trial court, after identifying the
two-prong Strickland ineffectiveness test as the controlling law,
adjudicated the claim on the merits.  In denying the claim, the
trial court stated, in pertinent part:

                                35

In ground five, Defendant asserts that counsel rendered ineffective assistance by failing to properly advise her on her right to testify.  This Court notes that the following dialogue occurred during the inquiry:

THE COURT: Your attorney has indicated she has no other witnesses to call, I want you to recall now my first trial you did testify?

THE DEFENDANT: Yes, sir.

THE COURT: You certainly know you have the right to testify?

THE DEFENDANT: Yes, sir.

THE COURT:  And regardless of what you and Miss Harris and Miss Wilson [defense counsel] are to advise you or recommend[,] that has to be your decision?

THE DEFENDANT: Yes, sir.

THE COURT:  And you -- I must assume you decided you do not wish to testify in this case?

THE DEFENDANT: Well, Your Honor, I really don't, I don't [think] I really need to testimony [sic] now, I mean, it's been established what I established before, the scars and everything been here, you know, and that's what I want to establish my teeth missing, scars been over ten years, you know, that's what I testified, right?

THE COURT: This is true.

THE DEFENDANT:  Well, don't you think it[']s been established?

36

THE COURT: You had witnesses testify to that.[8]

THE DEFENDANT: I'm not being funny, I'm a little nervous, okay.

THE COURT: I understand.

THE DEFENDANT: I think -- don't you think it's been established that they [sic] saying this didn't happen since June 5th, I had it when I was in the car.

THE COURT:  Miss Ford, do you recall the question I asked?  My question to you, I want to make sure you've decided on your own, you do not wish to testify in this case because you did testify in your prior case.

THE DEFENDANT: No, sir. I don't think I need to testify.

THE COURT: Okay. Well, that's fine, I just want to make sure for the record but you do understand if you wish to testify you could do so?

THE DEFENDANT: Yes.

THE COURT: Okay. But you do not want to testify?

THE DEFENDANT: No, sir.

THE COURT: All right. Have a seat.

---

[8] Chanerra Ford (Petitioner's daughter) had testified that Petitioner had, for years, a split left ear lobe and scars on her head and was missing most of her teeth.  Tr. at 186-88.  Further, Petitioner's facial scars and her ear had been published to the jury.  Id. at 188-89.  Amy West had similarly testified that Petitioner had, for years, facial scars and "a gap" in her left ear lobe.  Id. at 217-18.

(Exhibit "C," pages 230-232.)   This Court
finds that Defendant acknowledged that it was
her right to testify and that she was
knowingly and voluntarily forgoing [sic] the
right to testify because she did not believe
it was necessary.   Defendant may not now seek
to go behind her own **sworn** statements in a
Motion for Post Conviction Relief.   <u>Stano v.
State</u>, 520 So.2d 278 (Fla. 1988); <u>Dean v.
State</u>, 580 So.2d 808 (Fla. 3d DCA 1991); <u>Bir
v. State</u>, 493 So.2d 55 (Fla. 1st DCA 1986).
Accordingly, this Court finds that Defendant
has failed to establish any error by counsel
or prejudice to her case.

Ex. I at 71-72.

As noted previously, Petitioner appealed, and the appellate
court per curiam affirmed the trial court's order.   Accordingly,
the claim was rejected on the merits by the state trial and
appellate courts.   Thus, this ground should be addressed applying
the deferential standard for federal court review of state court
adjudications, as required by AEDPA.   Upon a thorough review of
the record and the applicable law, it is clear that Petitioner is
not entitled to relief on the basis of this claim because the state
courts' adjudications of the claim were not contrary to clearly
established federal law, did not involve an unreasonable
application of clearly established federal law, and were not based
on an unreasonable determination of the facts in light of the
evidence presented in the state court proceedings.   <u>See</u> Response at
23-25.

## VII. Conclusion

Any other claims not specifically addressed are found to be without merit. Accordingly, for all of the above-stated reasons, the Second Amended Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Second Amended Petition (Doc. #8) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Second Amended Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of May, 2006.

HOWELL W. MELTON
United States District Judge

sc 5/2
c:
Gloria Jean Lyle, a/k/a, Anita Faye Ford
Assistant Attorney General (McCoy)

39